UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMARJEET S.,[1] <br><br> Petitioner, <br><br> v. <br><br> KRISTI NOEM, et al., <br><br> Respondents. | No. 1:26-cv-00559-TLN-EFB <br><br><br> **ORDER** |

This matter is before the Court on an Order to Show Cause why a preliminary injunction should not issue (ECF No. 5) after granting Petitioner Amarjeet S.'s ("Petitioner") underlying Motion for Temporary Restraining Order ("TRO") (ECF No. 4).  Respondents filed a response and did not request a hearing.[2]  (ECF No. 7.)  Petitioner replied.  (ECF No. 9.)  For the reasons set forth below, the Court issues a preliminary injunction.

---

[1]  As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]  Respondents filed their response late by one court day, and although Respondents did not request an extension of time, they did explain and address the error.  (ECF No. 7 at 1.)  Accordingly, under Fed. R. Civ. P. 6(b), the Court finds good cause to extend the deadline for Respondents' excusable neglect and accepts the late filing.

1

### I. FACTUAL BACKGROUND

Petitioner is a citizen of India and an asylum applicant in the United States. (ECF No. 1 at 2, 4.) On March 18, 2019, Petitioner entered the United States. (*Id.* at 4.) Three days later, he was detained by immigration authorities. (*Id.*) While in custody, Petitioner was found to have a credible fear of persecution in India and was placed into removal proceedings to apply for asylum. (*Id.*) Around July 2, 2019, immigration authorities released Petitioner on bond. (*Id.*)

For over six years, Petitioner has resided in the United States. (*Id.* at 2.) During that time, Petitioner complied with the conditions of his release. (*Id*. at 5.) Petitioner also applied for asylum. (*Id.* at 4.) His asylum application was denied in 2002, but Petitioner appealed to the Board of Immigration Appeals, and his appeal has been pending for four years. (*Id.*)

Despite Petitioner's lack of criminal history and his compliance with the conditions of his release, on December 2, 2025, Petitioner was detained during a routine U.S. Immigration and Customs Enforcement ("ICE") appointment. (*Id.* at 5.) Petitioner was detained for nearly two months without notice or hearing. (*Id.* at 5–8.)

Petitioner challenges the lawfulness of his civil detention. (*See* ECF Nos. 1, 4.) On January 23, 2026, this Court issued a TRO requiring Petitioner's release and restraining Respondents from re-detaining Petitioner absent compliance with constitutional due process. (ECF No. 5.) Although the TRO expired, the Court now determines whether the relief contained in the TRO should continue as a preliminary injunction.

### II. STANDARD OF LAW

For a preliminary injunction, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the

hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary injunction. *Id.* at 1134–35.

### III. ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause.[3]

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

##### i. Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

---

[3] Petitioner also asserts that Respondents violated the Immigration and Nationality Act and that Respondents unlawfully revoked his release. (ECF No. 1 at 5.) Finding relief is warranted on Petitioner's other claims, the Court declines to address the additional claims.

1    Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by
2    statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he
3    government's decision to release an individual from custody creates 'an implicit promise,' upon
4    which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to
5    the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,
6    2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a
7    noncitizen released from custody pending removal proceedings has a protected liberty interest in
8    remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL
9    2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional
10   release rises to the level of a protected liberty interest, courts have "compar[ed] the specific
11   conditional release in the case before them with the liberty interest in parole as characterized by
12   *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.
13   Cal. Sept 9, 2025).

14        Here, Petitioner gained a liberty interest in his continued freedom after he was released
15   from custody on bond in 2019. (ECF No. 1 at 4.) Under *Morrisey*, this release implied a promise
16   that he would not be re-detained, during the pendency of his immigration proceedings, if he
17   abided by the terms of his release. Petitioner asserts he complied with the conditions of his
18   release including regularly attending ICE check-ins as required. (*Id*. at 2.) Indeed, his detention
19   resulted from his compliance with a routinely scheduled ICE appointment. (*Id*. at 5.) As this
20   Court has found previously, along with many other courts in this district when confronted with
21   similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the
22   outcome of his immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093
23   (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the
24   community for over five years strengthened petitioner's liberty interest).

25        In opposition, Respondents argue Petitioner is subject to mandatory detention under
26   8 U.S.C. § 1225(b)(1). (ECF No. 7 at 2.) Under the Immigration and Nationality Act,
27   § 1225(b)(1) mandates detention during expedited removal proceedings for certain noncitizens
28   and does not provide for a bond hearing. As Respondents acknowledge, this Court and the

majority of Courts in this district, have repeatedly rejected Respondents' position that § 1225(b)(1) extinguishes a petitioner's liberty interest, particularly where the Government has acted to confer liberty. *See, e.g.*, *Thakur P.B. v. Murray*, No. 1:26-CV-00170-TLN-JDP, 2026 WL 407748, at *2 (E.D. Cal. Feb. 13, 2026); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1091 (E.D. Cal. 2025); *Tigranyan v. Warden of California City Det.*, No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *4 (E.D. Cal. Jan. 13, 2026), *report and recommendation adopted*, No. 1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026). "Petitioner's rights are not limited to those laid out by statute." *Mohammed v. Warden of California City Det. Ctr.*, No. 1:26-CV-00118-DJC-CSK, 2026 WL 192368, at *2 (E.D. Cal. Jan. 26, 2026) (citing *Nielsen v. Preap*, 586 U.S. 392, 420 (2019)).

Thus, Petitioner maintains his protected liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for over six years. (*Id.* at 2.) Petitioner was then detained for nearly two months without any notice or opportunity to be heard. (*Id.* at 5–8.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Where removal is not imminent under a final order of

1  removal, "[t]he government has no legitimate interest in detaining individuals who have been
2  determined not to be a danger to the community and whose appearance at future immigration
3  proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872
4  F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is
5  nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger
6  to the community.") (cleaned up).  Here, Petitioner's appeal is pending and there is no final order
7  of removal.  (ECF No. 1 at 4.)  Respondents also do not dispute Petitioner's assertion that he
8  complied with the conditions of his release.  (*See generally* ECF No. 7.)  Additionally,
9  immigration authorities would have found Petitioner not to be a danger to the community or a
10 flight risk when they released him on bond in 2019.  Since then, neither party has identified any
11 change in circumstances, except for Petitioner's six years of compliance and lawful conduct.
12 Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his
13 liberty interest.  Without any procedural safeguards to determine whether his detention was
14 justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL
15 2617255, at *4.

16         Finally, the Government's interest is low, and the effort and cost required to provide
17 Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-
18 TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  As discussed above, there is
19 nothing in the record to infer that Petitioner is a danger to the community or a flight risk.
20 Moreover, the cost and time of procedural safeguards are minimal here.  Notice and custody
21 determination hearings are routine processes for Respondents.  Any delay in detention (if
22 justified) for the time to provide notice and a hearing would have been minimal.  It would also be
23 less of a fiscal and administrative burden for Respondents to return Petitioner home to await a
24 determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*,
25 No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit
26 has recognized that the costs to the public of immigration detention are staggering.").

27         The Court finds that, under these circumstances, Respondents were required to provide
28 notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the

6

Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where there is no final order of removal, no change in circumstances, a history of compliance, and no criminal history — the Court finds pre-deprivation notice and hearing are possible and valuable to preventing erroneous deprivation of liberty. Further, Respondents have not provided any substantive opposition to the contrary. (*See* ECF No. 7.)

Respondents did not provide either notice or a pre-deprivation hearing. Nor did Respondents provide a post-deprivation hearing. (ECF No. 1 at 5–8.) Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.     Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a preliminary injunction. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. If Petitioner can be re-detained, he faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his asylum application. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

### C.     Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed

in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). Any burden imposed by requiring Respondents to refrain from re-detaining Petitioner unless and until they comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he is unlawfully re-detained. In sum, these last two factors weigh in Petitioner's favor.

### IV.  CONCLUSION

Accordingly, to prevent further irreparable harm, the Court issues a PRELIMINARY INJUNCTION as set forth below. IT IS HEREBY ORDERED:

1. Respondents are ENJOINED AND RESTRAINED from imposing additional restrictions on Petitioner's terms of release, unless such restrictions are determined to be necessary at a pre-deprivation/custody hearing.

2. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

3. This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: February 26, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8